Rel: February 28, 2025

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is published in **Southern Reporter**.

# ALABAMA COURT OF CIVIL APPEALS

## OCTOBER TERM, 2024-2025

————————————————

## CL-2024-0504, CL-2024-0505, and CL-2024-0506

————————————————

## C.R.B.

### v.

## Jackson County Department of Human Resources

**Appeals from Jackson Juvenile Court
(JU-22-281.02, JU-22-282.02, and JU-22-283.02)**

FRIDY, Judge.

C.R.B. ("the mother") appeals from three essentially identical judgments of the Jackson Juvenile Court ("the juvenile court") terminating her parental rights to three of her children, L.L.B., J.L.B.,

and C.J.B. ("the children").[1] The children's father, Z.S.B. ("the father"), consented to the termination of his parental rights to the children, and he does not appeal. For the reasons discussed herein, we remand the cases to the juvenile court for it to determine whether it had subject-matter jurisdiction over these matters.

<u>Background</u>

The evidence adduced at the May 9, 2024, trial on the petitions to terminate the mother's parental rights to the children indicates the following regarding the issue of jurisdiction. The Jackson County Department of Human Resources ("DHR") became involved with the family in November 2022. The mother testified that she is a Tennessee resident. In November 2022, she said, she had rented a motel room for a week in Bridgeport because her brother had been killed earlier that year and she hoped to find a place to live that was closer to her sister-in-law, who resided in South Pittsburg, Tennessee, near the Alabama border. It is not clear from the record where the mother had a permanent residence

_____

[1] The mother testified that she had four older children in addition to the children involved in these cases. However, she said that at the time of the events made the basis for these cases, she did not have custody of any of the older children, all of whom lived with family members in Tennessee.

-- or whether she had a permanent residence -- in November 2022. She testified that, when she and the father "broke up," "the courts in Tennessee" had considered her to be homeless because she had been living with her brother. The children's father also lived in Tennessee.

While staying at the motel in Bridgeport with the children, who were then four years old, three years old, and four months old, the mother allowed a friend to stay in their room. The mother testified that the friend overdosed on fentanyl, while the children were present in the room. The mother and others staying at the motel were unable to revive the friend, who died. Someone notified law-enforcement officials, the mother said. When they arrived, the mother was arrested and charged with various drug offenses.

Alyssa Newsom, a DHR employee, testified that the DHR had received a report about the mother's arrest, and, after an investigation, DHR had picked up the children. After a shelter-care hearing, the children were placed in foster care in Alabama. DHR held an individualized-service-plan ("ISP") meeting the day after that hearing. Newsom said DHR personnel and the mother discussed certain goals for

the mother, including drug and alcohol assessments, visits with the children, and the securing of housing, employment, and transportation.

The mother said that she lived in Tennessee while she was trying to comply with the goals that DHR had set for her. Because she was a Tennessee resident, the mother said, DHR had told her that she would have to take part in color-code drug testing in Tennessee and have the results sent to DHR. Newsom corroborated the mother's testimony. The mother said that she had participated in drug testing in Tennessee.

The mother said that, after her arrest, she was kept in the Jackson County jail for four days. When she was released, she said, she went to stay with her own mother in Georgia for "just a few weeks" before moving to her grandparents' house in South Pittsburg. She testified that she stayed with her grandparents for "a couple of months" before moving in with her sister-in-law in South Pittsburg for a short while. In July 2023, the mother said, she began living at a substance-abuse treatment facility in Nashville, Tennessee. At the time of the trial, she lived in a halfway house in Lebanon, Tennessee. Since November 2022, when the children entered foster care, the mother has held three jobs, all in Tennessee. It

4

does not appear, based on the evidence in the record, that she ever resided in Alabama.

Analysis

Although neither party questions the juvenile court's jurisdiction to consider this matter, it appears that the mother and the children were merely visiting Alabama when DHR took custody of the children in November 2022, which raises concerns about the juvenile court's subject-matter jurisdiction. From the record, it does not appear that either the parties or the juvenile court addressed the issue of jurisdiction.

"'[J]urisdictional matters are of such magnitude that we take notice of them at any time and do so even ex mero motu.'" Wallace v. Tee Jays Mfg. Co., 689 So. 2d 210, 211 (Ala. Civ. App. 1997), quoting Nunn v. Baker, 518 So. 2d 711, 712 (Ala. 1987)). The Uniform Child Custody Jurisdiction and Enforcement Act ("the UCCJEA"), § 30-3B-101 et seq., Ala. Code 1975, governs whether a juvenile court has subject-matter jurisdiction in cases that involve questions of a child's custody. The UCCJEA differentiates between a court's jurisdiction to make an "initial child custody determination" and a court's "continuing, exclusive jurisdiction" over a child-custody determination. See §§ 30-3B-201, -202,

5

and -203, Ala. Code 1975. An action seeking to terminate a parent's parental rights is a "child custody proceeding" under the UCCJEA. § 30-3B-102(4), Ala. Code 1975.

The juvenile court entered judgments regarding the children's custody after a shelter-care hearing and a subsequent dependency action. Neither of those judgments is included in the record on appeal. Section 30-3B-202 states that, except as provided in § 30-3B-204 (which concerns a court's temporary emergency jurisdiction), the juvenile court would have had continuing, exclusive jurisdiction to consider the termination of the mother's parental rights only if it had entered a prior child-custody determination consistent with § 30-3B-201 or -203. See § 30-3B-202, Ala. Code 1975; Patrick v. Williams, 952 So. 2d 1131, 1138 (Ala. Civ. App. 2006). Because the parents did not appeal from the previous judgments regarding the children's custody, this is the first time that this court has been able to examine whether the juvenile court properly exercised jurisdiction in those matters.

Section 30-3B-201(a), Ala. Code 1975, provides that, except in cases involving the court's temporary emergency jurisdiction pursuant to § 30-

3B-204, an Alabama court has jurisdiction to make an initial child-custody determination only if:

"(1) This state is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six months before the commencement of the proceeding and the child is absent from this state but a parent or person acting as a parent continues to live in this state;

"(2) A court of another state does not have jurisdiction under subdivision (1), or a court of the home state of the child has declined to exercise jurisdiction on the ground that this state is the more appropriate forum under Section 30-3B-207 or 30-3B-208[, Ala. Code 1975], and:

"a. The child and the child's parents, or the child and at least one parent or a person acting as a parent, have a significant connection with this state other than mere physical presence; and

"b. Substantial evidence is available in this state concerning the child's care, protection, training, and personal relationships;

"(3) All courts having jurisdiction under subdivision (1) or (2) have declined to exercise jurisdiction on the ground that a court of this state is the more appropriate forum to determine the custody of the child under Section 30-3B-207 or 30-3B-208; or

"(4) No court of any other state would have jurisdiction under the criteria specified in subdivision (1), (2), or (3)."

§ 30-3B-201(a). Section 30-3B-203, Ala. Code 1975, provides that an Alabama court

7

"may not modify a child custody determination made by a court of another state unless a court of this state has jurisdiction to make an initial determination under Section 30-3B-201(a)(1) or (2)[, Ala. Code 1975,] and:

"(1) The court of the other state determines it no longer has continuing, exclusive jurisdiction under Section 30-3B-202[, Ala. Code 1975,] or that a court of this state would be a more convenient forum under Section 30-3B-207[, Ala. Code 1975]; or

"(2) A court of this state or a court of the other state determines that the child, the child's parents, and any person acting as a parent do not presently reside in the other state."

As mentioned, during the course of the current actions, the parties and the juvenile court did not question the juvenile court's subject-matter jurisdiction to consider the termination of the mother's parental rights. Therefore, the record does not contain any evidence from which we can determine (1) whether any of the circumstances included in § 30-3B-201(a) existed; (2) whether a court of another state had previously entered a child-custody determination as to the children, see § 30-3B-203; or (3) whether the juvenile court properly exercised its temporary emergency jurisdiction in such a manner as to give rise to continuing jurisdiction, see § 30-3B-204(b). We also do not have a record of the earlier

dependency action in which the issue of jurisdiction may have been discussed.

Because we lack sufficient information to determine whether the juvenile court had subject-matter jurisdiction under the UCCJEA, we reinvest the juvenile court with jurisdiction for forty-five days from the date of this opinion so that it can hold an evidentiary hearing during which the parties can develop a record from which such a determination can be made. The juvenile court should supplement the record with a transcript of that hearing, as well as the subsequent judgments. See W.S. v. Houston Cnty. Dep't of Hum. Res., [Ms. CL-2023-0794, May 31, 2024] ___ So. 3d ___ (Ala. Civ. App. 2024).

If subject-matter jurisdiction was considered during the previous dependency action, instead of or in addition to holding an evidentiary hearing on remand, the juvenile court may supplement the record on appeal with evidence from the record from the dependency action indicating the basis on which subject-matter jurisdiction was determined. If, on remand, the juvenile court determines that it does not have subject-matter jurisdiction under the UCCJEA, it should vacate its judgments terminating the mother's parental rights.

Conclusion

These causes are remanded and the juvenile court is reinvested with jurisdiction for forty-five days so that it can determine whether it had subject-matter jurisdiction to terminate the parents' parental rights under the UCCJEA. After making its determination, the juvenile court is to enter a judgment or judgments consistent with this opinion.

CL-2024-0504 -- REMANDED WITH INSTRUCTIONS.

CL-2024-0505 -- REMANDED WITH INSTRUCTIONS.

CL-2024-0506 -- REMANDED WITH INSTRUCTIONS.

Moore, P.J., and Edwards, Hanson, and Lewis, JJ., concur.